THE PEOPLE OF THE STATE OF NEW YORK EX REL. JETHRO W. WHEELER, RESPONDENT, *v.* THE LONG ISLAND RAILROAD COMPANY, APPELLANT.

*Railroad company — power of the court to compel it to furnish reasonable traveling facilities for the residents of places along its route — when such power should not be exercised.*

A peremptory *mandamus* was awarded in this case commanding the defendant, a railroad company, to run upon its road from its station in Locust avenue, Queens county, and its station at Long Island city, in the morning and evening, such passenger trains as would, taking into consideration the usual business hours of the day in New York, afford reasonable and necessary railroad facilities to the residents and travelers at Locust station. The company ran one freight train, with a passenger car attached, from Long Island City, stopping at Locust station, in the morning, and ran it back to the city in the evening. There were but nine houses at Locust station, and but five persons holding commutation tickets. The receipts at that station fell from $274.69, in 1877, to $198.23 in 1881. The extra expense of maintaining the road-bed for full passenger travel would be about $1,500 a year. Prior to the present arrangement the company ran six or seven trains each way daily, and the average number of passengers from this station each way was less than one a day. Jamaica station, at which all trains stopped, was less than two miles from Locust station.

*Held,* that the court erred in awarding the *mandamus.*

*Quære,* as to the power of the court to control a railroad company in exercising the power of regulating the time and manner in which passengers and property shall be transferred, conferred upon it by section 9 of subdivision 2 of chapter 133 of 1880, so long as it does not suspend or cease to perform its duties as a common carrier.

APPEAL from a judgment in favor of the plaintiff, entered upon the trial of this action by the court without a jury, awarding a

126   PEOPLE ex rel. WHEELER *v.* LONG I. R. R. CO.

SECOND DEPARTMENT, DECEMBER TERM, 1883.

peremptory writ of *mandamus* compelling the defendant to increase the railroad facilities furnished by it at Locust avenue station.

*Edward E. Sprague*, for the appellant.

*Marshall P. Stafford*, for the relator.

DYKMAN, J. :

This is an appeal from a judgment in favor of the plaintiff awarding a peremptory writ of *mandamus* commanding the defendant to increase its railroad facilities and run passenger trains over its railroad running between the stations of Jamaica and Springfield *via* the stations of Locust avenue, in Queens county, and stop the same at Locust avenue in such manner as to furnish reasonable facilities to the public to proceed from said station at Long Island City in the morning, and to return from Long Island City to said station of Locust avenue at night at hours having a reasonable regard to the usual business hours of 'the day in the city of New York, and to furnish all necessary and reasonable railroad facilities to the public at Locust avenue station and in traveling thereto and therefrom.

When this judgment was made there was a freight train with a passenger car attached running eastward from Long Island City, stopping at Locust avenue station in the morning and on its return in the evening, but no train from that station in the morning or to it in the evening. The number of houses at that station occupied by persons doing business in New York or Brooklyn in May, 1882, was five, and the number of houses built there since the construction of the railroad is four. The number of commuters from the station in May, 1882, was five, and the receipts of the road at this station have been gradually diminishing from $274.69, in 1877, to $198.23, in 1881. The extra expense for maintaining the road-bed for full passenger travel would be about $1,500. During the sixteen months prior to the change complained of, from six or seven trains each way daily to one, the average number of passengers from this station was less than one each way daily. The station at Jamaica on this road, where all the trains stop, is about two miles from Locust station, and the relator can take the trains there by going about a mile and a-half.

These are the main facts and it will be seen that the defendant has not abandoned its line of road *via* Locust avenue station. It operates one train daily each way over this line, and has not abandoned the exercise of its corporate powers and privileges. No action could be maintained to annul the franchise on the ground of non-user.

Is this, therefore, a case where the court should interfere to compel the defendant to impart further facilities to the station in question? Railroad companies are trading corporations clothed with public functions in the sense that their ownership of property is private and their management is for the advantage of the corporation, yet in many essential particulars they differ from ordinary private corporations. Power is conferred on them to invoke the exercise of the right of eminent domain and they are endowed with franchises which they hold in trust for the public good. Their roads are public highways and the land over which they are constructed is condemned for a public use. They, therefore, owe a duty to the public to exercise the franchise granted them by the State.

But, while it is quite true that by the railroad law of the State, all railroads constructed under it are maintained for the public use, and the duty is imposed on them to furnish accommodations for the transportation of all persons and property on payment of fare, yet the law does not prescribe the times or manner of the performance of that obligation. On the contrary the railroad corporations have themselves the power to regulate the times and manner in which passengers and property shall be transported. (Chap. 133, Laws 1880, sec. 2, subd. 9.) This provision of law vests these corporations with discretion respecting the mode of exercising their franchises, and so long as their operations are not suspended and their duties are not unperformed, the courts should not interfere, especially on the application of a private individual, to regulate the exercise of their discretion ; without refusal or neglect to perform the duties of carrier, the courts should not so interfere.

Besides all this, who shall say what accommodations are reasonable. Railroad companies are expected to transport passengers, especially with great speed, and it is not practicable to stop all their trains at all places, or to establish stations to accommodate all persons. Many persons are compelled to go longer distances than

this relator to take the cars, and it would be a great hardship to compel the railroad companies to establish and maintain stations and stop their trains to save travel for all in taking their trains. Another very serious question is whether the whole question does not belong in the field of legislation instead of the domain of jurisprudence, but we will not examine or discuss the question now.

Our view is that a case is not presented for the interference of the court, and that the judgment should be reversed, with costs.

BARNARD, P. J., concurred; PRATT, J., concurred in the result.

Judgment reversed, with costs.